UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDRE DAVIS,

        Plaintiff,                                  Hon. Wendell A. Miles

v.                                                    Case No. 1:04-CV-58

ERIC SMITH, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Smith's, Rivard's, Raddatz's, and Nicholson's Rule 12(b) Motion for Dismissal and Rule 56(b) Motion for Summary Judgment. (Dkt. #37). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action dismissed.


BACKGROUND

Plaintiff is currently incarcerated in the St. Louis Correctional Facility. The allegations set forth in Plaintiff's 40 page complaint span the year 2003, during which he was incarcerated in the Riverside Correctional Facility (RCF), the Bellamy Creek Correctional Facility (IBC) and the St. Louis Correctional Facility (SLF). Plaintiff initiated this action against 14 individuals, alleging the following.

On January 16, 2003, Plaintiff was transferred to RCF, where he was confined at security level II. (Complaint at ¶ 1). On March 2, 2003, Plaintiff wrote a grievance alleging that the law library did not comply with MDOC policy because it was too small, noisy and disruptive for legal work to be

conducted. (Complaint, Exhibit A). Plaintiff further alleged that Facility Manager Phyllis Clements was misappropriating funds intended to bring the law library in compliance with MDOC policy. (Complaint at ¶ 5). Warden Price denied Plaintiff's grievance, stating in part that "the current library facilities are temporary due to ongoing construction" at the facility. (Complaint, Exhibit A).

Plaintiff contends that he received a further memorandum from the Warden several days later, stating, "I have received the letter you sent to Ms. Clements. I am going to strongly advise you to not continue trying to drag staff into your misrepresentation of facts. If you continue to accuse people of theft or misappropriation of funds, you might just find yourself in a more appropriate level." (Complaint at ¶ 7). Plaintiff has failed to submit any evidence of this alleged correspondence.

Plaintiff interpreted this latter memorandum as a threat to move him to a higher security level if he continued to complain about the law library facilities. (Complaint at ¶ 10). On March 14, 2003, Plaintiff submitted a grievance (directly to Step III) against Warden Price, alleging staff corruption. (Complaint, Exhibit B). This grievance was returned to Plaintiff with instructions to file the grievance at Step I of the grievance process. *Id.* There is no evidence that Plaintiff pursued the matter any further.

On March 22, 2003, Plaintiff had an encounter with Defendant Rogers in the law library. (Complaint at ¶ 11). According to Plaintiff, Defendant Rogers told another corrections officer that he should "watch" Plaintiff because he scared her. Plaintiff claims that he asked Rogers why she was "trying to get [him] caught up," to which she allegedly "I don't have to try - it will be done." *Id.* According to Rogers, Plaintiff stated to her that "I am going to do something, but I'm trying to decide if I want to stay a level II or go back to a level 5." (Complaint, Exhibit C). When Rogers asked Plaintiff what he was going to do, Plaintiff allegedly responded "something to you." Rogers further asserted that

Plaintiff blocked the library door when she attempted to leave. Defendant Rogers issued Plaintiff a major misconduct for threatening behavior. Plaintiff was convicted of the misconduct charge and sentenced to 30 days detention. *Id.* He was also transferred to IBC where he was reclassified to security level IV and placed in administrative segregation. (Complaint at ¶¶ 13-15).

Alleging that the misconduct hearing and the security reclassification procedures were improper, Plaintiff submitted a grievance. (Complaint, Exhibit D). According to Plaintiff, he was interviewed regarding this grievance on April 25, 2003, at which time he was informed that he "need[s] to take responsibility for [his] actions." (Complaint at ¶ 18-19). Plaintiff was further informed that he "can go back to level 2, but first you need to demonstrate good behavior. . .because we can send you to level 5, based on this misconduct and your past assaultive history." Defendant Bell ended the interview by informing Plaintiff that "the bottom line is it's all up to you - you can leave segregation, eventually go back to level 2 or you can stay." *Id.* Plaintiff interpreted these comments as a "further threat to increase my security even higher based upon writing grievances." (Complaint at ¶ 20). Plaintiff was released from administrative segregation on June 5, 2003, and transferred to SLF on July 24, 2003. (Complaint at ¶¶ 35-36).

Defendant Rivard had learned that Plaintiff was trained as a legal writer and, therefore, requested that he be transferred to SLF so that he could work as a legal writer in the soon-to-be-launched legal writer program at SLF. (Rivard Affidavit at ¶¶ 3-4). Plaintiff was interviewed by Defendants Rivard and Raddatz on July 28, 2003, for possible assignment as a legal writer. (Complaint at ¶ 37). Plaintiff was selected to participate in the program and began his duties on or about August 10, 2003. (Complaint at ¶¶ 37-38).

On August 19, 2003, Plaintiff wrote a letter to the Honorable Richard Alan Enslen alleging that the Legal Writer Program recently begun at SLF did not comply with the requirements articulated by the Court in *Knop v. Johnson* and *Hadix v. Johnson*. (Complaint at ¶ 39, Exhibit G). On September 2, 2003, Plaintiff complained to the Warden that several officers, including Defendant Nicholson, were harassing him and another legal writer. (Complaint at ¶ 40, Exhibit H).

On September 11, 2003, Plaintiff filed a grievance alleging that he was not being paid at the proper rate for his work as a legal writer. (Complaint at ¶ 41). According to Plaintiff, the Warden denied his grievance, stating that he had to receive "a positive work report" to receive the requested pay raise. *Id.* Plaintiff has not submitted evidence of this particular grievance or the alleged response thereto.

On October 4, 2003, Plaintiff wrote to Barbara Hladki, the Legal Writer Consent Decree Monitor, complaining that SLF's legal writer program was inadequate and not in compliance with the relevant consent decree. (Complaint at ¶ 42, Exhibit I). Plaintiff made numerous allegations, including (but certainly not limited to) the following: (1) the program was not being operated in compliance with the relevant consent decree, and (2) Defendant Raddatz had failed to forward his email correspondence to the contract attorneys participating in the legal writer program. *Id.*

On October 9, 2003, Defendant Raddatz allegedly confronted Plaintiff regarding the letter he sent to Barbara Hladki. (Complaint at ¶ 43). Raddatz allegedly told Plaintiff that his letter "had made her look incompetent." According to Plaintiff, Raddatz reported that she had requested that Plaintiff be removed from his position as a legal writer. *Id.*

On October 21, 2003, Plaintiff allegedly showed Defendant Raddatz the grievance response indicating that Plaintiff could be paid at the higher rate given to legal writers only if Raddatz

authored a positive work report regarding his performance. (Complaint at ¶ 44). According to Plaintiff, Defendant Raddatz told him that she had already written a positive work report, but "would change it and write a bad one if [Plaintiff] wrote any more complaints on her or the Legal Writer Program." *Id.* Plaintiff responded by writing a grievance against Defendant Raddatz. (Complaint at ¶ 45, Exhibit J).

As Plaintiff was exiting the law library on October 27, 2003, he was allegedly searched by Defendant Nicholson. (Complaint at ¶ 47). During this search, Nicholson confiscated from Plaintiff a complaint he had written against Defendant Raddatz. According to Plaintiff, Nicholson refused to give him a contraband removal receipt. *Id.* Plaintiff reported this incident to Defendant Rivard, who allegedly informed Plaintiff that he would recover the material in question "before the end of the day." (Complaint at ¶ 48). According to Plaintiff the material in question was not returned to him by the end of the day, so he filed another grievance. *Id.*

On October 28, 2003, Plaintiff was allegedly searched by Defendant Nicholson as he was departing the library. (Complaint at ¶ 49). Nicholson allegedly confiscated "3 separate complaints" which Plaintiff had written against Nicholson. After taking this material Nicholson gave Plaintiff a contraband removal slip on which he allegedly wrote that he had confiscated from Plaintiff "1 piece of paper." *Id.* Later that evening, Plaintiff prepared to go to the library to work his evening shift as a legal writer. (Complaint at ¶ 50). Before leaving, however, Plaintiff was informed that Defendant Raddatz had instructed the guards to inform Plaintiff that he "didn't need to go to the law library" that night because he was being terminated from his position. *Id.*

Plaintiff asserts that he was nonetheless told the following morning to report to work in the law library. (Complaint at ¶ 51). When asked by Plaintiff why she had requested his return, Raddatz allegedly stated, "if you're going to keep writing grievances on me, then I don't want you over here but

they say I can't fire you because you haven't done anything wrong." *Id.* Plaintiff responded by filing another grievance against Raddatz for allegedly "trying to terminate [him] from [his] assignment as a Legal Writer based solely upon [his] filing grievances." (Complaint at ¶ 52, Exhibit M). Plaintiff further alleged that because Raddatz had prevented him from reporting to work on October 28, 2003, he was unable to meet a filing deadline in a matter concerning a prisoner-client. Defendant Smith rejected Plaintiff's grievance, concluding that: (1) Plaintiff had been instructed to remain in his cell on October 28, 2003, because he was not needed in the library that evening - not because he was being terminated from his position, and (2) Plaintiff's assertions regarding the missed filing deadline were "false." *Id.*

On November 17, 2003, Defendant Raddatz completed a work assignment evaluation regarding Plaintiff's performance. (Dkt. #38, Exhibit H). She recommended that Plaintiff be terminated from his position as a legal writer. According to Raddatz:

> [Plaintiff] is an intelligent and competent legal writer. However his
> performance is gravely impacted by his attitude. He is rude and arrogant
> and insists that his demands are not inappropriate but are legitimate.
> Whenever he has been refused some demand, his immediate response is
> to make untruthful complaints.

Defendant Rivard declined to terminate Plaintiff from his position, however, and instead characterized Raddatz's evaluation as a "1st warning" to Plaintiff. *Id.*

On November 18, 2003, Plaintiff encountered Defendant Smith in the law library. (Complaint at ¶ 61). According to Plaintiff, he approached Smith and asked him "why he placed false information in the grievance response that was not a part of the grievance and on what basis did he substantiate his bolstering [Plaintiff's] work performance when he never supervised [Plaintiff] or even worked in the law library while [Plaintiff] was working." According to Plaintiff, he then informed Smith

"that if he did not change his response to be an accurate reflection of the issues in the grievance [Plaintiff] was going to write a grievance on him and would not participate in any further grievance interviews with him." When Smith informed Plaintiff that he needed to interview him regarding another (separate) grievance, Plaintiff responded that he refused to participate. *Id.* Plaintiff later wrote a grievance against Defendant Smith for allegedly falsifying his grievance response in an attempt to "absolve Librarian Raddatz of any wrongdoing." (Complaint at ¶ 62, Exhibit N).

Defendant Smith charged Plaintiff with insolence, a major misconduct. (Dkt. #38, Exhibit G). At the misconduct hearing, Plaintiff acknowledged making the statements attributed to him by Defendant Smith and which formed the basis for the major misconduct charge. Plaintiff denied that he was guilty of insolence, however, because his statements were "not made to harass, degrade or alarm Smith," but instead were simply "a statement of what he was going to do." Finding that Plaintiff's comments were not intended to harass, degrade, or alarm Smith, the hearing officer found Plaintiff not guilty of the charge. *Id.*

On November 21, 2003, Defendant Abrams placed Plaintiff on modified grievance access. (Complaint at ¶ 64). Pursuant to MDOC policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." Mich. Dep't Of Corr., Policy Directive 03.02.130, ¶ II. (effective April 28, 2003). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.* at ¶ LL.

On November 26, 2003, Plaintiff requested (from Defendant Abrams) a Step I grievance form so that he could grieve Abrams for placing him on modified access. (Complaint at ¶ 68). Defendant Abrams denied Plaintiff's request. *Id.* Plaintiff later renewed his request, alleging that the decision to place him on modified grievance access constituted "an arbitrary punishment being utilized outside the scope of its purpose to prevent [Plaintiff] from filing any grievance against the Legal Writer program in an effort to hinder and impede [his] ability to petition the government for redress of grievances." (Complaint at ¶ 72). This request was also denied. (Complaint at ¶ 73).

On December 9, 2003, Plaintiff was found guilty of having his shirt untucked during a cell search, a minor misconduct violation. (Complaint at ¶ 70). Plaintiff was sentenced to 5 days top-lock, during which he could not report for his job as a legal writer. (Complaint at ¶¶ 70, 74-75). On December 16, 2003, Defendant Raddatz completed another work assignment evaluation regarding Plaintiff's performance. (Dkt. #38, Exhibit I). Raddatz reported that Plaintiff had "not come over for his call-outs for his detail." She concluded, therefore, that Plaintiff had "quit." Defendant Rivard adopted Defendant Raddatz's recommendation and terminated Plaintiff from his position. *Id.*

On January 29, 2004, Plaintiff initiated the present action in which he asserted numerous claims against fourteen defendants. (Dkt. #1). On March 31, 2004, the Court dismissed all but the following claims: (1) Defendant Smith retaliated against Plaintiff by falsely charging him with insolence, (2) Defendant Raddatz retaliated against Plaintiff by threatening to change his work report so that he would not receive a pay increase and ultimately terminated him from his work assignment, and (3) Defendants Nicholson and Rivard retaliated against Plaintiff by improperly seizing his legal materials. (Dkt. #5-6). Plaintiff also claims that Defendants conspired to violate his constitutional rights. Defendants Smith, Rivard, Raddatz, and Nicholson now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, recent Supreme Court decisions have encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir.

1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## **ANALYSIS**

**I.**      **Plaintiff's Claims Against Defendant Smith**

As noted above, Plaintiff encountered Defendant Smith in the law library on November 18, 2003. Plaintiff acknowledges that he asked Smith "why he placed false information in [his] grievance response." Plaintiff does not deny that he then told Smith "that if he did not change his response to be an accurate reflection of the issues in the grievance [Plaintiff] was going to write a grievance on him and would not participate in any further grievance interviews with him." Plaintiff also acknowledges that he subsequently told Smith that he refused to cooperate with him in any further grievance investigations.

Defendant Smith charged Plaintiff with insolence, a major misconduct. As previously noted, Plaintiff was found not guilty of this charge on the ground that he had not intended to harass, degrade, or alarm Smith. Plaintiff asserts that Defendant Smith charged him with insolence as retaliation "to prevent [Plaintiff] from being able to write a grievance on Smith for trying to cover up the retaliatory threats of Librarian Raddatz."

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thaddeus-X*, 175 F.3d 378, 394 (6th Cir. 1999).

1.   Protected Conduct

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Id.* at 391 (citations omitted). This protection also guarantees to inmates the right to file non-frivolous grievances. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct). While Plaintiff's grievance against Defendant Smith is of questionable merit, there exists a legitimate question as to whether it qualifies as frivolous. Thus, Plaintiff has demonstrated that there exists a legitimate question as to whether he was engaged in protected conduct.

2.   Adverse Action Which Would Deter a Person of Ordinary Firmness

As the Sixth Circuit has recognized, the mere issuance of a major misconduct charge subjects inmates "to the risk of significant sanctions," including the imposition of punitive segregation and the deprivation of good-time credits. *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002).

Accordingly, the *Brown* court determined that it was not unreasonable to conclude that being subjected to the risk of such severe sanctions for asserting a legitimate grievance could deter a person of ordinary firmness from engaging in such protected conduct. *Id.* Moreover, as the Sixth Circuit recently reiterated, "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004).

While Plaintiff was found not guilty of insolence, such does not necessarily imply that the issuance of the major misconduct ticket was improper. In fact, Defendant Smith's decision to charge Plaintiff with insolence appears to have been justified by Plaintiff's actions. Nonetheless, the Court is persuaded by the rationale articulated by the *Brown* and *Scott* courts and, therefore, conclude that where an inmate is charged - but not convicted - of a major misconduct violation such can reasonably be expected to deter a person of ordinary firmness from exercising his First Amendment rights.

### 3. Causal Connection

To sustain his retaliation claim, Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue, and as has been recognized, while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial. As the Sixth Circuit has stated, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399; *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if Defendant demonstrates that he "would have taken the same

action in the absence of the protected activity," he is entitled to summary judgment. *Thaddeus-X*, 175 F.3d at 399.

Plaintiff asserts that Defendant Smith retaliated against him so as to *prevent him* from filing a grievance. Plaintiff has not asserted that Smith retaliated against him because of action he undertook, but instead because of action he *intended* to take. Such a chronology fails to support that Defendant Smith's allegedly retaliatory acts were motivated by Plaintiff's protected conduct. *See, e.g., Seals v. Caruso*, 1994 WL 567587 at *2 (6th Cir., Oct. 14, 1994) (where inmate alleged that he was fired from his prison job "before he filed his prison grievance," the court recognized that "it is factually impossible for his firing to be the result of retaliatory conduct").

Moreover, as Defendant Smith asserts in his affidavit he charged Plaintiff with insolence "for his behavior towards me." (Smith Affidavit at ¶ 8). As previously noted, Plaintiff does not dispute that he made the statements which formed the basis of the insolence charge. Thus, even if it is assumed that Plaintiff was engaged in protected conduct, Defendant Smith has demonstrated that he would have charged Plaintiff with insolence regardless of his protected activity. Plaintiff has submitted no evidence to the contrary.

In sum, Plaintiff cannot establish that Defendant Smith's action were motivated by his protected conduct. Accordingly, the Court recommends that Defendant Smith is entitled to summary judgment as to Plaintiff's retaliation claim. The Court further recommends that Defendant Smith be granted summary judgment as to Plaintiff's conspiracy claim. *See* 42 U.S.C. § 1985; *Sawyer v. Lexington-Fayette Urban County Government*, 2001 WL 1006237 at *2 (6th Cir., Aug. 21, 2001) (citing *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)) (recognizing that a conspiracy claim must fail

where plaintiff cannot establish that the alleged conspiracy deprived him of a right or privilege protected by the laws or Constitution of the United States).

**II.        Plaintiff's Claims Against Defendant Raddatz**

As detailed above, Plaintiff submitted various grievances regarding his concern that the legal writer program was not being properly administered. Plaintiff claims because he brought these matters to the attention of prison and court officials, Defendant Raddatz retaliated against him. Specifically, Plaintiff claims that Defendant Raddatz threatened to withhold a pay raise from him and ultimately fired him from his position as a legal writer.

As noted above, to the extent that prisoners file non-frivolous grievances, such constitutes protected conduct. While Plaintiff's grievances are of questionable merit, there exists a legitimate question as to whether they qualify as frivolous. Moreover, being denied a pay raise and being fired from a prison job (especially a position such as a legal writer) can, in the undersigned's opinion, reasonably be expected to deter a person of ordinary firmness from exercising his First Amendment rights. Thus, Plaintiff can establish the first two elements of his retaliation claim against Defendant Raddatz. However, Plaintiff cannot establish that his protected conduct motivated Defendant Raddatz to undertake the actions at issue.

With respect to the issue of Plaintiff's pay, Raddatz asserts in her affidavit that Plaintiff "was paid the entry level pay for this position" and "received his first step increase and received his final increase to $3.34 in November in compliance with normal prisoner wage procedure." (Raddatz Affidavit at ¶ 5). Plaintiff has submitted absolutely no evidence calling into question these assertions or otherwise demonstrating (or even suggesting) that he was improperly paid.

With respect to Plaintiff's termination from his position as a legal writer, Defendant Raddatz asserts that she recommended that Plaintiff be terminated from his position as a result of his work performance. (Raddatz Affidavit at ¶¶ 12-14). Defendant's assertions are further supported by the affidavit submitted by Julius Mayfield, the Corrections Program Coordinator at SLF. (Mayfield Affidavit at ¶¶ 1-3). Plaintiff has submitted absolutely no evidence calling into question these assertions.

In sum, Plaintiff cannot establish that Defendant Raddatz's allegedly retaliatory actions were in any way motivated by Plaintiff's protected conduct. Accordingly, the Court recommends that Defendant Raddatz be granted summary judgment as to Plaintiff's retaliation claim. The Court further recommends that Defendant Raddatz be granted summary judgment as to Plaintiff's conspiracy claim. *See* 42 U.S.C. § 1985; *Sawyer,* 2001 WL 1006237 at *2.

### III.    Plaintiff's Claims Against Defendants Nicholson and Rivard

As discussed above, Defendant Nicholson searched Plaintiff as he departed the law library on October 27, 2003. Plaintiff asserts that Nicholson confiscated a complaint he had written against Defendant Raddatz and refused to give him a contraband removal receipt. According to Plaintiff he reported the incident to Defendant Rivard who informed Plaintiff that he would secure the return of the material in quesiton.

Defendant Nicholson again searched Plaintiff the following day as he departed the law library. Plaintiff asserts that Nicholson confiscated "3 separate complaints" which Plaintiff had written against Nicholson. After taking this material Nicholson allegedly gave Plaintiff an inaccurate contraband removal receipt indicating that he had taken only a single piece of paper. Plaintiff further asserts that Defendant Rivard instructed Nicholson to "continue" to confiscate Plaintiff's materials but

to "just write a contraband removal slip to make it appear in accord with the mandates of policy." (Complaint at ¶ 54a). Plaintiff asserts that Defendants Nicholson and Rivard improperly retaliated against him and, furthermore, conspired to violate his constitutional rights.

With respect to the October 27, 2003 incident, Defendant Nicholson asserts that the material he confiscated from Plaintiff "was mixed up with another prisoner's paperwork." (Nicholson Affidavit at ¶ 4). Nicholson further asserts, however, that because the material in question "appeared to be legal" he "turned it over to Librarian Raddatz so she could return it to the Plaintiff." *Id.* Defendant Rivard asserts that the material "confiscated" from Plaintiff on October 27, 2003, was returned to Plaintiff. (Rivard Affidavit at ¶ 9). Plaintiff has submitted absolutely no evidence contradicting these assertions. With respect to the October 28, 2003 incident, Defendant Nicholson asserts that

> I did shake down the Plaintiff and took stapled paper from him that had my name written on it. I wrote the necessary contraband removal for the confiscated items; however, I inadvertently indicated one piece of paper instead of one pack of papers. I sought clarification on the confiscated items with Sgt. Grembowski to determine of the items were contraband or not due to my name being on it. It was determined that it was not contraband and the papers were returned to the Plaintiff at his cell that same night.

(Nicholson Affidavit at ¶ 5).

Defendant Rivard denies that he instructed Defendant Nicholson to confiscate any of Plaintiff's property. (Rivard Affidavit at ¶ 12). Plaintiff has submitted absolutely no evidence calling into question either Defendant Nicholson's or Defendant Rivard's assertions.

Plaintiff has failed to demonstrate that he was engaged in protected conduct. He has likewise failed to demonstrate that the temporary deprivation of items of personal property, legitimately seized, can reasonably be expected to deter a person of ordinary firmness from exercising his constitutional rights. Finally, Plaintiff has submitted no evidence from which it can reasonably be

inferred that Defendants' conduct was in any way motivated by any protected conduct in which Plaintiff was engaged. In sum, Plaintiff cannot establish that Defendants Nicholson or Rivard retaliated against him. Accordingly, the Court recommends that Defendants Nicholson and Rivard be granted summary judgment as to Plaintiff's retaliation claims. The Court further recommends that Defendants be granted summary judgment as to Plaintiff's conspiracy claims. *See* 42 U.S.C. § 1985; *Sawyer,* 2001 WL 1006237 at *2.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants Smith's, Rivard's, Raddatz's, and Nicholson's Rule 12(b) Motion for Dismissal and Rule 56(b) Motion for Summary Judgment</u>, (Dkt. #37), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 9, 2005                  /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge