UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DAVIS,

    Plaintiff,                                                  Case No. 1:04-cv-58

v                                                                Hon. Wendell A. Miles

PATRICIA CARUSO, et al.,

    Defendants.

_____/

ORDER ON PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

The plaintiff in this action is a Michigan prisoner. In his *pro se* complaint, plaintiff asserts claims against various Michigan corrections officials under 42 U.S.C. § 1983. Most of the defendants have been dismissed from the action, and the remaining claims consist of First Amendment-based retaliation claims against four defendants employed at Michigan's St. Louis Correctional Facility ("SLF"), where plaintiff served as a legal writer.

On February 9, 2005, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation ("R & R") recommending that a motion for dismissal and/or summary judgment filed by the four remaining defendants be granted and that plaintiff's action be dismissed. Plaintiff has filed objections to the R & R (docket no. 56). The court, having reviewed the R & R filed by the United States Magistrate Judge in this action, and having

reviewed the plaintiff's objections, agrees with the recommended disposition contained in the R & R. Judgment will therefore be entered accordingly.

## Discussion

Plaintiff's unpaginated, 11-page "Objections" are at times rambling, unfocused, and disorganized. Many of his "objections" are not so much objections as they are arguments, the most notable examples being plaintiff's disagreement with the R & R's statement regarding his place of confinement, as well as his repeated accusations of bias on the part of the Magistrate Judge. The court will address these arguments below, in addition to plaintiff's arguments regarding the claims against each of the remaining defendants.

Because this is a prisoner case in which a dispositive motion is at issue, this court reviews de novo any portion of the Magistrate Judge's decision to which specific written objection has been made. See Fed.R.Civ.P.72(b). However, the court's review of this matter is not limited solely to the specific objections made by the defendants to the R & R. A portion of the federal Prison Litigation Reform Act ("PLRA") expressly provides that "the court shall dismiss the case at any time" if it determines that the action "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii) (concerning review of *in forma pauperis* actions). The law "requires federal district courts to undertake *sua sponte* review of Section 1983 complaints filed by prisoners to determine whether the complaints state claims on which relief may be granted." Baxter v. Rose, 305 F.3d 486, 488 (6th Cir. 2002). In determining whether a complaint

should be dismissed for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitled him to relief.  In re DeLorean Motor Co., 991 F.2d 1236, 1239-1240 (6th Cir. 1993).

### Place of Confinement

Plaintiff begins his "Objections" by disputing the Magistrate Judge's statement that he is incarcerated at SLF.  R & R at 1.  Says plaintiff, he "is not, and has not been at St. Louis for any of the proceedings in this case."

Plaintiff is correct to point out that he is not currently incarcerated at SLF.  According to court records, plaintiff notified the court by letter dated February 28, 2005 that he was residing at the G. Robert Cotton Correctional Facility ("RCF").  Plaintiff's letter was received and filed by the court on March 5, 2005.  The R & R will therefore stand corrected in this regard.

It is noted, however, that it is false for plaintiff to represent that he "has not been at [SLF] for any of the proceedings[.]" On the face of his original complaint filed on January 29, 2004, plaintiff lists his address as being at SLF.[1]  (Plaintiff had apparently resided at SLF since July, 2003 (docket no. 29, ¶ 4; docket no. 47, ¶ 2).  In April, 2004, plaintiff notified the court that his address had changed to the Chippewa Correctional Facility (docket no. 10).  Although it is

---

[1]According to plaintiff's complaint, he resided at the following facilities when the events which are the subject of this lawsuit arose:  (1) SLF;  (2) the Riverside Correctional Facility; and  (3) the Bellamy Creek Correctional Facility.  Complaint, ¶ II.

not known precisely when plaintiff was transferred to RCF, the court did not receive another address change notice from plaintiff until March 5, 2005 (docket no. 55).

Plaintiff's transfer to a different facility has no bearing on any remaining issues in this action.  Certainly, a prisoner's transfer to a correctional facility which does not employ any of the officials named as defendants may affect any claims for injunctive relief.  Therefore, because plaintiff is no longer incarcerated in a correctional facility where any of the remaining defendants are employed (according to their affidavits filed in support of their motion, all are employed at SLF), any claims for injunctive relief against these defendants would be moot.  <u>Dellis v. Corrections Corp. of America</u>, 257 F.3d 508, 510 n.1 (6th Cir. 2001); <u>Kensu v. Haigh</u>, 87 F.3d 172, 175 (6th Cir.1996).  However, plaintiff's complaint expressly demands injunctive relief only against defendant Patricia Caruso, who has already been dismissed from this action.  In any event, it is questionable whether the remaining defendants – Smith, Raddatz, Nicholson, and Rivard – would even have the authority to reinstate plaintiff to his position as a legal writer, either at SLF or at any Michigan correctional facility for that matter.

## **Bias**

In his "Objections," plaintiff no less than six times either explicitly or implicitly accuses the Magistrate Judge of being biased either against him or in favor of the defendants.  However, plaintiff has not sought the recusal of the Magistrate Judge, nor does the record provide any basis for recusal.

Title 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." Circumstances requiring disqualification include "personal bias or prejudice concerning a party[.]" 28 U.S.C. § 455(b)(1). A judge must recuse herself only "'if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990) (quoting Hughes v. United States, 899 F.2d 1495, 1501 (6th Cir. 1990)). "The standard is an objective one; hence, the judge need not recuse [herself] based on the 'subjective view of a party' no matter how strongly that view is held." Sammons, 918 F.2d at 599 (quoting Browning v. Foltz, 837 F.2d 276, 279 (6th Cir. 1988)). "In addition, prejudice or bias must be personal or extrajudicial in order to justify recusal under section 455(a)." Sammons, 918 F.2d at 599.

The court discerns no basis for plaintiff's claims of bias, apart from his own subjective views. Nothing in the record suggests in the least that the Magistrate Judge harbors personal or extrajudicial prejudice against him. The court therefore concludes that plaintiff's claims that the Magistrate Judge was biased are unwarranted and unreasonable.

### Claims Against Defendants Smith, Raddatz, Nicholson, and Rivard

At the outset, the court notes that plaintiff's claims against these defendants for compensatory damages for the alleged violation of his First Amendment rights are barred, absent actual harm. "[T]he abstract value of a constitutional right may not form the basis for § 1983

5

damages." Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 n.11, 106 S.Ct. 2537, 2543 n.11 (1986). In addition, it is noted that courts have disagreed on whether 28 U.S.C. § 1997e(e), which precludes prisoner claims for "mental or emotional injury" absent "a prior showing of physical injury[,]" applies to First Amendment claims. See, e.g., Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004) ("we read § 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners"); but see Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) (expressing the belief that although the PLRA "provides limitations on actions for mental or emotional injury, it does not preclude actions for violations of First Amendment rights"); see also Thompson v. Carter, 284 F.3d 411, 417-418 (2d Cir. 2002) ("Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual injury," however, statute does not limit the availability of nominal or punitive damages, or damages for loss of property provided plaintiff can establish actual injury). As best the court can determine, the Sixth Circuit has not addressed this issue in any published decisions having precedential value. According to the Supreme Court, the PLRA "draws no distinction between constitutional claims that require proof of an improper motive and those that do not." Crawford-El v. Britton, 523 U.S. 574, 597, 118 S.Ct. 1584, 1596 (1998). The court would conclude that under § 1997e(e), plaintiff has no claim against these defendants for mental or emotional injury as a matter of law.

Assuming that plaintiff's remaining claims for wage loss and nominal or punitive

damages are not barred, the court addresses plaintiff's objections as to each of the individual remaining defendants.

**Smith.**   The Magistrate Judge concluded that plaintiff had failed to establish a First Amendment retaliation claim against defendant Smith because the timing of Smith's alleged retaliatory act – the filing of a misconduct charging plaintiff with insolence – preceded plaintiff's filing of a grievance against Smith.  The Magistrate Judge also concluded that because plaintiff did not dispute that he actually made the statements which formed the basis for the misconduct charge, Smith had shown that he would have charged plaintiff regardless of his protected activity. In his "Objections," plaintiff appears to object to the following: (1) a requirement that he show, what he deems, "temporal proximity," and (2) the Magistrate Judge's failure to consider what is, according to plaintiff, evidence that Smith retaliated against him for participating in the grievance process against not only Smith but also against other defendants.

According to the allegations of plaintiff's own complaint, he attempted to file a grievance against Smith only after Smith participated in the processing of a grievance plaintiff had filed against defendant Raddatz.  Complaint, ¶s 54, 55, 61, 62.  Plaintiff himself also alleges that he confronted Smith about Smith's response to the Raddatz grievance; specifically, plaintiff alleges that he accused Smith of placing "false information" in the grievance response and threatened to file his own grievance against Smith "if he did not change his response[.]" Complaint, ¶ 61.

Plaintiff at some point apparently acted on this threat. Id., ¶ 62.[2]  In addition, according to the misconduct hearing report on the insolence charge, plaintiff admitted making the comments alleged by Smith, but claimed that his remarks were justified because he had a "valid grievance" against Smith.  Therefore, the issue was not what plaintiff said, but rather whether his words amounted to "insolence."

As a matter of law, it is difficult to perceive how a prisoner's threat to use the grievance process against an official solely to gain advantage in the processing of another grievance, and the resulting  exposure of that threat by the official, constitutes retaliation in violation of the First Amendment.  In any event, the court concludes that plaintiff has stated no valid claim here because the undisputed evidence shows that plaintiff was found not guilty of the misconduct charge.  Plaintiff suffered no harm.  In addition, plaintiff did not deny Smith's factual allegations. Therefore, plaintiff's speech could not have been "chilled" in an unconstitutional manner by what amounted to true statements contained in a misconduct charge; the charge consisted of Smith essentially repeating what plaintiff had said.  Under the circumstances, the court concludes that the Magistrate Judge reached the correct result in rejecting plaintiff's claim against Smith.

**Raddatz.**  The Magistrate Judge concluded that plaintiff 's First Amendment retaliation claim against defendant Raddatz failed because he could not establish that Raddatz's actions against plaintiff were motivated by plaintiff's participation in the grievance process.  In his

---

[2]It is noted that plaintiff's own grievance against Smith was denied because it was perceived that he was merely attempting to re-grieve issues already raised in the grievance against Raddatz.

"Objections," plaintiff accuses the Magistrate Judge of bias and argues that the causation element of his claim is proved by Raddatz' reference to his "protected conduct" in work report she prepared evaluating his performance as a legal writer.[3]  Plaintiff also argues that because Raddatz at one point described him as "an intelligent and competent legal writer," he could not have been terminated for his work performance.

"It is well established . . . that no prisoner has a constitutional right to a particular job or to any job."  Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987).  However, assuming that plaintiff engaged in protected conduct by filing non-frivolous grievances against prison officials, Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000), and that depriving him of his legal writer job constituted adverse action sufficient to deter a person of ordinary firmness from exercising his rights under the First Amendment, the court concludes that plaintiff cannot show that Raddatz's actions ultimately caused him to be fired.

In her first written evaluation of plaintiff's work performance, Raddatz did describe plaintiff as "intelligent and competent."  However, she also reported that plaintiff's performance was "gravely impacted by his attitude," which she characterized as "rude and arrogant."  According to Raddatz, "whenever [plaintiff] has been refused some demand, his immediate response is to make untruthful complaints."  As many who have held employment in the outside

---

[3]The Magistrate Judge did not conclude that plaintiff's grievances constituted "protected conduct."  Rather, she merely concluded that "there was a legitimate question" as to whether his conduct was protected even though his grievances were "of questionable merit."  R & R, at 14.  The Magistrate Judge did not, as plaintiff now contends in his objections, conclude that plaintiff's grievances were "frivolous."  It is noted that plaintiff has not at this point demonstrated that his grievances had merit.

9

world can likely attest, a poor attitude can get you fired just as poor work can.[4]  Notably, plaintiff appears to concede that Raddatz's characterization of his attitude had some basis in fact; plaintiff admits that he "was not the most sociable person to interact with [Raddatz] and rather than engage in meaningless conversation, he put his complaints in writing."  Plaintiff also admits that he "was not a 'company boy'"; he did not "tap-dance, shoeshine, boot-lick or otherwise 'perform.'"

The evidence, including the Department of Corrections' written procedure for prisoner work assignments, shows that while a prisoner generally needs to receive two evaluations "describing poor work performance, rule violations, etc.," in order to be terminated, a prisoner who fails to report to a work assignment may be charged with a major misconduct and/or removed from the work assignment; removal may be requested in an evaluation form.  According to plaintiff, he was not terminated from his legal writer position until after he received what he deems a "minor misconduct for a frivolous and trivial minor rule violation" which caused him to be placed under toplock, which in turn prevented him from being able to report to his job.  Complaint, ¶ 86; Count III, ¶ 91.  This misconduct involved plaintiff having his shirt untucked.

---

[4]Of course, prison employment is unlike employment in the outside world in the sense that prison is a vastly more structured, disciplined environment.  However, an inability to get along with others can, just as in the outside world, get a prisoner fired from his job – or even transferred.  In Smith v. Campbell, 250 F.3d 1032 (6th Cir. 2001), the court affirmed a decision dismissing the retaliation claim of a prisoner who had been fired from his position as a legal advisor and transferred to another prison.  The court concluded that although "temporal proximity" between the plaintiff's grievances and his transfer provided "some circumstantial support for a causal connection[,]" this was "easily overcome" by evidence that plaintiff lost his prison job and was transferred because of incidents involving "aggressive, belligerent, and intimidating behavior towards other inmates and staff."  Id. at 1038.

Id., ¶ 86. The misconduct charge was not filed by Raddatz, but by another corrections officer, Enderle. And, according to plaintiff's complaint, at the misconduct hearing plaintiff did not deny the charge but instead conceded that he "really did not recall" whether his shirt was untucked and tried to explain that it could have come untucked inadvertently. Id., ¶ 70.

Although plaintiff argues that the penalty imposed for having his shirt untucked – toplock – was excessive, he admits that he could have been charged with a major misconduct for missing work, but he wasn't; instead, he was terminated. Complaint, Count III, ¶ 91, Exhibit C. Raddatz neither filed the minor misconduct charge nor imposed the discipline which caused plaintiff to miss work. When plaintiff failed to report to work, Raddatz merely prepared an evaluation recommending that plaintiff be terminated, reporting – accurately – that plaintiff had "not come over for his call-outs for his detail." Under the circumstances, the court concludes that the Magistrate Judge reached the correct result in rejecting plaintiff's claim against Raddatz.

**Nicholson.** The Magistrate Judge concluded that plaintiff's First Amendment retaliation claim against defendant Nicholson failed because plaintiff could not establish any of its required elements. In his "Objections," plaintiff again accuses the Magistrate Judge of bias and argues that there is evidence that Nicholson seized plaintiff's "documents" in "an intimidating manner" and in order to prevent plaintiff from "criticiz[ing] the legality" of unspecified actions taken by Nicholson, Raddatz, Smith, and Rivard.

The court concludes that the Magistrate Judge reached the correct result in rejecting plaintiff's claims against Nicholson. Even assuming that whatever was in plaintiff's

11

"documents" amounted to protected speech, the evidence shows that the documents were returned promptly. (Plaintiff has not objected to the Magistrate Judge's characterization of the deprivation as "temporary." R & R at 16.) Their prompt return not only evidences the lack of a retaliatory motive, but also demonstrates a lack of harm.

A claim that plaintiff's complaints or grievances were temporarily confiscated is akin to a claim of violation of right of access to the courts. However, the law is clear that such a challenge may not be raised in the absence of actual injury. See Lewis v. Casey, 518 U.S. 343, 351-352, 116 S.Ct. 2174, 2180 (1996) ("actual injury is apparent on the face of almost all the opinions" in Supreme Court's line of access-to-courts cases); see also Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999) (prisoner lacked standing to assert claim of denial of access to courts, where he did not explain how he suffered harm). "However unsettled the basis of the constitutional right of access to courts," Supreme Court precedent rests "on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 2186-2187 (2002) (footnote omitted). Even where retaliation is alleged, the plaintiff making such a claim has the burden to establish that the retaliatory acts "amounted to more than a de minimis injury." Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff simply has no legitimate First Amendment claim against Nicholson based on the temporary confiscation of his "documents."

**Rivard.** The Magistrate Judge also concluded that plaintiff's First Amendment retaliation claim against defendant Rivard failed because plaintiff could not establish any of the

required elements and because the evidence failed to show, as plaintiff alleges, that Rivard instructed Nicholson to confiscate plaintiff's property. In his "Objections," however, plaintiff seemingly argues merely that Rivard may be held liable as a "supervisor" because he allegedly encouraged or approved of Nicholson's acts.

As noted above, plaintiff has no valid First Amendment claim against Nicholson. Therefore, even if plaintiff could overcome the hurdle of establishing Rivard's actual participation in a conspiracy with Nicholson, see <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it"), plaintiff has no valid claim against Rivard, and the Magistrate Judge did not err in her conclusion.

## <u>Conclusion</u>

Plaintiff's objections are overruled. Because this decision disposes of all remaining claims in the action, the court will enter a judgment accordingly.

Entered this 18th day of April, 2005.

        /s/ Wendell A. Miles
       Wendell A. Miles
       Senior U.S. District Judge